NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0177n.06

No. 15-1995

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JARED RAPP, | ) | **FILED** |
|  | ) | Mar 29, 2016 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| SUSAN PUTMAN; RICARDO REGO; FRED | ) | COURT FOR THE WESTERN |
| POSTON, | ) | DISTRICT OF MICHIGAN |
|  | ) |  |
| Defendants-Appellees. | ) |  |
|  | ) |  |

BEFORE: CLAY, GILMAN, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

A parking ticket issued in 2008 launched nearly a decade of litigation, culminating in the appeal before us. Plaintiff Jared Rapp was the recipient of the ticket. He confronted the official who issued it, resulting in yet another citation (and conviction) for "disrupt[ing] the normal activity" of a Michigan State University employee, in violation of MSU Ordinance § 15.05. Rapp challenged the constitutionality of the ordinance and prevailed in the Michigan Supreme Court. He then filed this § 1983 suit against the officials involved in the ordinance citation. The district court dismissed the complaint. We affirm the judgment of the district court.

I.

In September 2008, plaintiff was a law student at Michigan State University. He was also a member of the All University Traffic and Transportation Committee (AUTTC), which

often put him at odds with decisions of the MSU Department of Public Safety. One of those decisions was a parking citation issued to plaintiff on September 16, 2008. Plaintiff was cited for an expired meter, but according to plaintiff there was still time left on the meter. Upset, plaintiff sought out the nearest student parking officer, asked for his name, and requested to speak with his supervisor. The student officer, defendant Ricardo Rego, refused. Instead, he retreated to his vehicle and called police. Plaintiff took pictures of him as he sat in his vehicle. Defendant Susan Putman, the officer who responded to the call, cited plaintiff for violating MSU Ordinance § 15.05, which provided:

> No person shall disrupt the normal activity or molest the property of any person, firm, or agency while that person, firm, or agency is carrying out service, activity or agreement for or with the University.

Plaintiff asked the head of the MSU Department of Safety, defendant Fred Poston, to withdraw the citation, but he refused. According to plaintiff, Poston allowed the charge to go forward because plaintiff was something of a gadfly to parking officials: "Mr. Poston allowed the prosecution to go forward in retaliation for Plaintiff's inquiring about the identity of the parking enforcer, his frequent challenges to improper parking citations, and his activities on the AUTTC." He made a similar allegation of retaliatory motive against Putman.

The county prosecutor authorized charges on the ordinance violation. The case went to a jury, which found plaintiff guilty. He appealed his conviction to the Michigan Supreme Court, arguing that the ordinance was facially overbroad in violation of the First Amendment. On July 27, 2012, the Michigan Supreme Court agreed with Rapp and held the ordinance unconstitutional. *See People v. Rapp*, 821 N.W.2d 452 (Mich. 2012). On November 16, 2012, the state district court entered an order dismissing the conviction.

Nearly two years later, on November 11, 2014, plaintiff filed this suit alleging a First Amendment retaliation claim and a Fourth Amendment malicious-prosecution claim. Defendants moved to dismiss on the grounds that the claims were time-barred and, alternatively, that defendants were entitled to qualified immunity. Defendants argued that plaintiff's First Amendment retaliation claim was subject to a three-year statute of limitations and that it accrued in September 2008, when the retaliatory events took place. With respect to the malicious-prosecution claim, defendants argued that claim was subject to a two-year statute of limitations and that it accrued on July 27, 2012, when the Michigan Supreme Court ruled MSU Ordinance § 15.05 unconstitutional.

In response, plaintiff argued that "[t]he statute of limitations for filing a civil rights claim in Michigan is three years." (ID 84, citing M.C.L. § 600.5805(10).) Plaintiff also contended that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars § 1983 claims seeking damages for an unconstitutional conviction until that conviction has been reversed on direct appeal. Plaintiff argued that his conviction was not formally reversed until the state district court dismissed the case on November 16, 2012, which is when both his claims accrued under *Heck*.

The district court granted defendants' motion, holding that both claims were untimely. The district court held that the First Amendment retaliation claim accrued in September 2008 when he was charged because a reasonable person would know he was retaliated against at that time. Regarding the malicious-prosecution claim, the district court agreed with defendants that, "[u]nder Michigan law, a person must bring a malicious-prosecution claim within two years after the claim first accrued." (ID 198, quoting *Wolfe v. Perry*, 412 F.3d 707, 715 (6th Cir. 2005).) The court held that the malicious prosecution claim accrued "upon rendition of the final judgment on appeal[,]" which was when the Michigan Supreme Court ruled the ordinance

facially unconstitutional on July 27, 2012 (ID 199, quoting *Parisi v. Michigan Twps. Ass'n*, 332 N.W.2d 587, 591 (Mich. Ct. App. 1983).)  The court did not address defendants' defense of qualified immunity.  Plaintiff appeals, challenging both rulings as to timeliness.  Defendants reassert in this appeal their defenses of both the statute of limitations and qualified immunity.

## II.

This court reviews de novo a district court's decision to grant a motion to dismiss. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014).  The identification and application of the statute of limitations is a question of law that this court reviews de novo.  *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003).

## III.

Plaintiff first argues that the district court erred in determining that his First Amendment retaliatory-prosecution claim accrued in September 2008.

Federal law governs when a federal claim accrues.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Typically, "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  *Id.* (internal bracketing, quotation marks, and citations omitted).  However, as plaintiff observes, the standard rule is modified for "§ 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement."  *Heck*, 512 U.S. at 486.  Under the so-called *Heck* deferred-accrual rule, "a cause of action under § 1983 that would imply the invalidity of a conviction does not accrue until the conviction is reversed or expunged, and therefore the statute of limitations does not begin to run until such an event occurs, if ever."  *D'Ambrosio*, 747 F.3d at 384.

There are three elements to a typical First Amendment retaliation claim:  "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would

deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In a First Amendment retaliatory-prosecution claim—which is the precise claim plaintiff makes here—a plaintiff must also show that the prosecution lacked probable cause. *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006); *Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006).

Plaintiff argues that *Heck*'s delayed accrual rule applies because his retaliatory prosecution claim would have necessarily implied the invalidity of his conviction in two ways: (1) that he was engaged in protected conduct, and (2) that there was a lack of probable cause. Assuming plaintiff is correct that his retaliatory prosecution claim would have had that effect, *see Hensley v. Gassman*, 693 F.3d 681, 693 (6th Cir. 2012) (stating that the plaintiff's claim was not barred by *Heck* because it did not "require a finding of lack of probable cause"); *Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir. 2005) ("[Plaintiff's] underlying [conviction] and his § 1983 First Amendment claim require answering the same question—whether [his] behavior constituted protected activity or disorderly conduct."), that does not necessarily mean *Heck*'s delayed-accrual rule applies. As the Supreme Court made clear in *Wallace*, "the *Heck* rule . . . delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn." 549 U.S. at 393. In other words, where there is no *extant* conviction to impugn, *Heck* is not triggered at all. *See Fox v. DeSoto*, 489 F.3d 227, 234 (6th Cir. 2007) ("[T]he Court in Wallace clarified that the Heck bar has no application in the pre-conviction context.").

For plaintiff's retaliatory-prosecution claim, "what would otherwise be the accrual date," *Wallace*, 549 U.S. at 393, was when defendants initiated the prosecution. At that point, plaintiff

had engaged in protected activity (first element), defendants took an adverse action (second element) by initiating a prosecution of plaintiff purportedly motivated by plaintiff's protected conduct (third element) and without probable cause (fourth element). *See Thaddeus-X*, 175 F.3d at 394; *Barnes*, 449 F.3d at 720. Notably, in contrast to the *malicious*-prosecution claim at issue in *Heck*, a plaintiff need not prove favorable termination of the prosecution in order to establish a *retaliatory*-prosecution claim. *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011); *see also Williams v. Davis*, 609 F. App'x 865, 867 (7th Cir. 2015) ("Whether a person is convicted of a crime is irrelevant to [a retaliatory prosecution claim.]"). Thus, once defendants initiated the prosecution against plaintiff, each element of the cause of action was present and his claim became actionable.[1] At that point, plaintiff had no "*extant conviction* which success in [a] tort action would impugn." *Wallace*, 549 U.S. at 393. Therefore, *Heck* would not have barred the claim. As a consequence, *Heck*'s delayed-accrual rule does not apply. *See D'Ambrosio*, 747 F.3d at 385 ("[T]he possibility that his § 1983 claims might impugn an anticipated future conviction does not trigger the *Heck* rule for deferred accrual.") (internal quotation marks and bracketing omitted).

Because *Heck* does not apply in this situation, the general accrual standard controls. Under that standard, plaintiff's claim accrued in September 2008, when defendants initiated the prosecution. The governing statute of limitations for § 1983 claims arising in Michigan is three years. *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam). Thus, as the district

---

[1]Plaintiff does not allege that he did not know or did not have reason to know that he was injured (*i.e.*, that he was being prosecuted for retaliatory reasons and without probable cause) in September 2008. Were that the case, a different accrual date might apply. *See D'Ambrosio*, 747 F.3d at 384 (stating that an action does not accrue until "the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred").

court held, plaintiff's November 2014 complaint is untimely as it pertains to his First Amendment retaliatory-prosecution claim.

IV.

Plaintiff next argues that the district court erred in dismissing his Fourth Amendment malicious-prosecution claim as untimely. We agree, but affirm the dismissal based upon the preserved defense of qualified immunity.

The district court erred in identifying the applicable statute of limitations for plaintiff's Fourth Amendment malicious-prosecution claim. The district court relied on the two-year statute of limitations for state-law malicious prosecution claims, M.C.L. § 600.5805(5). But plaintiff's malicious-prosecution claim is based on the Fourth Amendment and § 1983, not state law. Ever since *Wilson v. Garcia*, 471 U.S. 261 (1985), courts apply a single statute of limitations for all § 1983 claims arising in a particular state. In Michigan, it is the three-year statute of limitations for personal-injury claims. *Carroll*, 782 F.2d at 44; M.C.L. § 600.5805(10). Thus, the district court should have applied a three-year statute of limitations, not a two-year one. Even under defendants' preferred accrual date—July 27, 2012, when plaintiff's conviction was reversed—plaintiff's November 11, 2014, complaint was filed within three years of that date. Thus, the district court erred in holding that plaintiff's Fourth Amendment malicious-prosecution claim is time-barred.

Defendants do not contest the foregoing, but argue that plaintiff waived opposition to the three-year statute of limitations. Defendants assert that plaintiff did not question the two-year limitations period advanced by defendants below and, therefore, cannot raise this argument on appeal. Defendants are correct that plaintiff did not explicitly reject their reliance on the two-

year statute of limitations; however, he did not accept it either.[2]   In fact, in his response to defendants' motion to dismiss, plaintiff cited case law applying the three-year statute of limitations (ID 84, citing *Carroll*, 782 F.3d 44).   Given this, we are unable to conclude that plaintiff waived any argument that a three-year statute of limitations applies.

V.

Defendants argued below and on appeal for dismissal of plaintiff's complaint on the basis that plaintiff failed to allege the violation of a clearly established constitutional right.   The district court did not address this argument, and plaintiff has not responded to it on appeal other than erroneously claiming that it is waived by defendants' failure to file a cross-appeal.   In this regard, plaintiff asserts that we do not have jurisdiction to address this issue.   To the contrary, "it is well-settled in this circuit that an appellee can propose alternative grounds in support of a trial court judgment so long as those arguments were presented below."   *Jacobs v. E.I. du Pont de Nemours & Co.*, 67 F.3d 1219, 1246 n.43 (6th Cir. 1995).   Furthermore, and again contrary to plaintiff's contention, defendants do not seek to enlarge the relief obtained in the district court— both the untimeliness and qualified-immunity holdings would result in the same relief:  dismissal of plaintiff's claims.   *See Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148–49 (5th Cir. 2010) (affirming district court's dismissal of claims based on statute of limitations but for the alternative reason that plaintiff failed to state a claim).   There is no jurisdictional impediment to ruling on this issue.

---

[2]As the district court stated, "Plaintiff does not expressly indicate whether he agrees, but does state that in his view, his 'case was filed on November 11, 2014, within two years of the accrual of the claims.'"

An official sued in his or her individual capacity is ordinarily immune from liability unless the particularized right at issue was so clearly established that every reasonable official would have understood that what he or she was doing violated that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2080, 2083 (2011). When assessing qualified immunity at the pleading stage, a court must examine the complaint for "facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). Plaintiff must allege *facts*—not "legal conclusion[s] couched as . . . factual allegation[s]"—that, when viewed in the light most favorable to plaintiff, "make out a violation of a constitutional right so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right." *Id.* at 652–53. "[T]he allegations must demonstrate that each defendant officer, through his or her own individual actions, *personally* violated plaintiff's rights under clearly established law." *Id.* at 653.

To state a valid Fourth Amendment malicious-prosecution claim, a plaintiff must establish four elements:

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014). Plaintiff's complaint fails on multiple fronts to state a plausible Fourth Amendment malicious-prosecution claim.

First, plaintiff's allegations relating to the second element, lack of probable cause, are vague and conclusory. For instance, plaintiff alleges that "[t]he statements made by Defendant

Rego were false and Defendant Rego was aware that the statements were false when made." He also alleges, "Defendant Putman inserted information in her report to the prosecutor that was false or exaggerated and misleading." Yet, plaintiff does not specify what was false about Rego's or Putman's information or how that information influenced the magistrate judge's decision to find probable cause and issue a complaint. *See Meeks v. Larsen*, 611 F. App'x 277, 282–83 (6th Cir. 2015) (holding that a complaint that "makes no effort to identify what th[e] false and misleading information was" fails to "ple[a]d specific facts necessary to establish [a] cause of action") (internal quotation marks and bracketing omitted). Plaintiff attached the police report to his response to the motion to dismiss, but again, did not identify what portions were false or misleading. Bare assertions that he was prosecuted based on "false information" and "without probable cause" are legal conclusions, not specific factual allegations necessary to survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do[.]").

Second, plaintiff failed to allege that defendant Poston "made, influenced, or participated in the decision to prosecute." *Robertson*, 753 F.3d at 616. "To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Sykes v. Anderson*, 625 F.3d 294, 308 n.5 (6th Cir. 2010). The sole basis for plaintiff's retaliation claim against Poston is his refusal to intervene and stop the prosecution. Even reading plaintiff's complaint generously, it alleges a merely "passive[] or neutral[]" role in the prosecution, insufficient to state a claim for malicious prosecution. *See id.*

Finally, by far the most evident deficiency in plaintiff's complaint is his failure to allege the third element, a "deprivation of liberty." *Robertson*, 753 F.3d at 616. Nowhere in his

complaint does plaintiff allege that he was "seized" or otherwise detained following the issuance of the citation. *Cf. Fisher v. Dodson*, 451 F. App'x 500, 502 (6th Cir. 2011) ("Traditionally, such claims entail defendants who are detained prior to trial."); *Gregory v. City of Louisville*, 444 F.3d 725, 749 (6th Cir. 2006) ("[C]ontinued detention without probable cause is an actionable Fourth Amendment injury under § 1983."). The closest he comes is alleging that he "was subject to the authority of the 54-B District Court or appellate Courts as a direct and proximate result of the conduct of Defendants." This allegation echoes Justice Ginsburg's "continuing seizure" doctrine from her concurrence in *Albright v. Oliver*, 510 U.S. 266 (1994), in which she argued that "a defendant [released pretrial] is . . . indeed 'seized' for trial, so long as he is bound to appear in court and answer the state's charges." *Id.* at 279 (Ginsburg, J., concurring). However, neither the Supreme Court nor this court has adopted the "continuing seizure" doctrine. *See Wallace*, 549 U.S. at 390 n.2 ("We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983[.]"); *Johnson v. City of Cincinnati*, 310 F.3d 484, 492 (6th Cir. 2002) ("[W]e have not yet explicitly addressed the 'continuing seizure' doctrine."). Thus, even if we assume that being "subject to the authority of the [court]" constitutes a Fourth Amendment seizure, defendants would still be entitled to qualified immunity because the particularized right alleged—the right to be free from a "continuing seizure" by virtue of a pending criminal charge—is not clearly established. *See Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate."); *see also Williams v. Crosby*, 43 F. Supp. 3d 794, 805 (N.D. Ohio 2014) ("Far from being clearly established in September 2012, this point of law [regarding "continuing seizures" and malicious-prosecution claims] was (and remains) expressly unsettled in this Circuit.").

Having failed to adequately allege several elements of his malicious-prosecution claim, plaintiff has failed to show that defendants violated his constitutional rights. As a result, the district court was correct to dismiss the malicious-prosecution claim, not because it was untimely, but because defendants are entitled to qualified immunity.

VI.

For these reasons, we affirm the judgment of the district court.