NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0217n.06

No. 17-4144

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DAVID L. CUMMIN, et al., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LANNY NORTH, DAVID VALKINBURG, EDWIN | ) | ON APPEAL FROM THE |
| DOWNS, HOCKING COUNTY BOARD OF | ) | UNITED STATES DISTRICT |
| COMMISSIONERS, SANDY OGLE, JEFF | ) | COURT FOR THE SOUTHERN |
| DICKERSON, JOHN WALKER, CLARK SHEETS, | ) | DISTRICT OF OHIO |
| BENJAMIN E. FICKEL, KYLE HENDERSON, and | ) | |
| LAINA FETHERFOLF, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

FILED
Apr 26, 2018
DEBORAH S. HUNT, Clerk

BEFORE: MERRITT, WHITE and DONALD, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Longstanding issues between Hocking County,

Ohio elected officials and Plaintiff-Appellant, Hocking County Coroner Dr. David Cummin,

came to a head in the summer of 2014, resulting in Cummin being charged with five second-

degree misdemeanors for dereliction of duty (three counts), coercion, and obstructing official

business. Four of the five charges were dismissed prior to trial, and Cummin was acquitted of

the final charge. Thereafter, Cummin filed this malicious prosecution action under § 1983 and

Ohio state law against various Hocking County officials. The district court granted summary

judgment in favor of Defendants-Appellees and Cummin appealed. We **AFFIRM.**

I.

Dr. Cummin has served in the part-time, elected position of Hocking County Coroner

since 1999. For the majority of that time, Cummin worked with two part-time investigators who

were paid $4,150 annually and received public-employee healthcare and retirement benefits. Ohio changed its Public Employees Retirement System eligibility in 2013, and limited eligibility for full benefits to employees making at least $12,000 annually. Cummin was unable to secure additional funding, so both investigators resigned at the end of 2013. Consequently, Cummin was the only employee at the coroner's office beginning January 1, 2014.

The record is clear, and both parties agree, that "longstanding issues" have existed between Cummin and Hocking County officials, particularly Defendants-Appellees Lanny North (Hocking County Sheriff), David Valkinburg (Chief Deputy Sheriff of Hocking County), Edwin Downs (Hocking County Sheriff's Detective), and Laina Fetherolf (former Hocking County Prosecutor). Cummin testified about several instances of contention, including an incident when Cummin subpoenaed eight deputies to his office and made them read aloud portions of the Revised Code because he felt he had not been properly notified of a death, and a case where Cummin personally contacted several family members of a decedent because he disagreed with the Sheriff's Office regarding the cause of death, and told the family that the Hocking County Sheriff was "covering up a homicide." In 2011, Prosecutor Fetherolf successfully sought the appointment of a Special Prosecutor, who negotiated a court-ordered protocol agreed to by Cummin and Hocking County officials governing the conduct of Cummin and Sheriff's deputies at death scenes. In 2012, Prosecutor Fetherolf sought advice from a colleague at the Ohio Attorney General's Office regarding a dispute over the sharing of information between Cummin and the Sheriff's office.

Another major area of disagreement was the Sheriff's and Prosecutor's dissatisfaction with inadequate coverage for the duties of the coroner's office during Cummin's absences from

Hocking County.[1]  Cummin left Hocking County several times in 2014, attending continuing-medical-education seminars in Dublin, Ohio from January 9–12 and January 23–26, and taking personal trips to Jamaica and New York in July.  When Cummin did not arrange for anyone to cover the office's duties while he travelled in January, Prosecutor Fetherolf filed a Complaint for Writ of Mandamus seeking an order directing Cummin to provide coverage for his duties when he was unavailable.  Fetherolf voluntarily dismissed the mandamus action when Cummin proposed a plan to provide coverage in the future.

On July 19, 2014, while Cummin was in New York, a homicide-suicide double shooting occurred in Hocking County.  Because Hocking County does not maintain sufficient facilities or personnel to conduct autopsies of victims of apparent homicide, traditionally those autopsies are performed by the Franklin County Coroner's office, which in turn bills the Hocking County Coroner.  The homicide victim's body was taken to the morgue so it could be transported to the neighboring Franklin County Coroner to conduct the autopsy.  However, Franklin County bills Hocking County approximately $1,100 per autopsy, and the Hocking County Coroner's lab and morgue account had only $610.25.

After being notified of the shooting, Cummin called Defendant-Appellee John Walker, one of three Hocking County Commissioners, about what to do with the homicide victim's body.  According to Cummin:

> I told him that we had a problem, that I only had - - I didn't have enough money in my budget for an autopsy and that I had a homicide victim that was on scene.  It occurred about 10:00 p.m. And that I didn't know what I was supposed to do since I couldn't send him legally for autopsy until I had moneys to prove that - - in

---

[1] *See* Ohio Rev. Code § 313.06 ("The coroner, his deputy, and assistants shall be available at all times for the performance of their duties as set forth in sections 313.01 to 313.22, inclusive, of the Revised Code.").

> the account. I can't spend money that wasn't allocated to me. I did not refuse to transport the body . . . . I did not say I wasn't going to do an autopsy . . . . I didn't ask for any resolution . . . . I asked him for his help.

[R.143 at PID 3673 – 74]. Cummin testified that Walker responded by assuring him that the necessary money would be placed in the coroner's account:

> He said he could assure me that there would be money put in there. And I said, John, you can only speak for one of the three commissioners. You cannot - - I need at least two commissioners to tell me that . . . . We're going to do things by the book and that's how it's going to be. I need some assurance that there will be money in there so that I don't get - - so I'm not breaking the law.

[R.142 at PID 3408].

Following this conversation, because Cummin indicated there was "an immediate concern" that the body needed to be transported as soon as possible, Walker called Prosecutor Fetherolf and the other two commissioners, Defendants-Appellees Clark Sheets and Sandy Ogle. All three commissioners agreed to transfer the funds to the coroner's office, and Walker's wife memorialized the commissioner's agreement. The hand-written memorialization, dated 12:15 a.m., July 20, 2014, stated that, on authorization of Prosecutor Fetherolf, the commissioners would transfer funds on Tuesday, July 22 to the coroner's lab and morgue account so that Cummin could immediately transport the body to Columbus. After receiving a copy of the memorialization by email, Cummin authorized the body to be transported to Franklin County for autopsy.

The Hocking County Sheriff's Office began investigating Cummin's conduct in office in July 2014. At the instruction of Defendant Valkinburg, Defendant Downs gathered reports of death investigations and eventually presented charges to Fetherolf, who reviewed and approved them. Downs then signed and filed five criminal complaints, collectively charging Cummin with

five second-degree misdemeanors: three counts of dereliction of duty based on Cummin leaving Hocking County without any coroner coverage, in violation of O.R.C. § 2921.44(E); and one count each of obstructing official business, in violation of O.R.C. § 2921.31, and coercion, in violation of O.R.C. § 2905.12(A)(5), both based on Cummin's refusal to transfer the body of the homicide victim until he had assurance from the commissioners that the Board would allocate sufficient funds to pay for the autopsy.

Cummin was out of town when the charges were filed, and he was served by mail. He was never handcuffed, arrested, jailed, or taken into custody. At his arraignment, Cummin pleaded not guilty and was released on a $1,500 personal recognizance bond. As conditions of his release, Cummin agreed to "appear before the court" and to "maintain his current address." **[*Id.*].** The release also stated that Cummin was "obligated to keep the court apprised of his[] current address." [R.159-1 at PID 3935].

Citing a potential conflict of interest, Fetherolf asked the municipal court to appoint a special assistant prosecuting attorney. The court granted the request and appointed a City of Athens prosecutor, James Stanley. Stanley reviewed the charges against Cummin and, although he believed there was probable cause for each charge, he elected only to proceed with the coercion charge.

The case proceeded to trial. At the conclusion of the State's case,[2] the trial judge dismissed the coercion charge pursuant to Ohio Criminal Rule 29.

---

[2] We note that the trial court excluded the testimony of Commissioners Ogle and Sheets the morning of trial. Additionally, although during Stanley's investigation, Commissioner Walker had told Stanley that he "felt coerced," [R.188-1 at PID 4488], he avoided using the word "coerced" during trial.

II.

Cummin, together with his wife and children, brought this action against Defendants-Appellees Sheriff North, Deputy Sheriff Valkinburg, Detective Downs, Prosecutor Fetherolf, Benjamin Fickel (current Hocking County Prosecutor), the Hocking County Board of Commissioners ("the Board"), and individual Commissioners Sandy Ogle, Clark Sheets, and John Walker. Plaintiffs asserted nine claims: (1) malicious prosecution under 42 U.S.C. § 1983; (2) malicious prosecution under Ohio law; (3) abuse of process; ( 4) intimidation of a public official; (5) violation of the Ohio Open Meetings Act; (6) loss of consortium; (7) declaratory judgment; (8) further relief pursuant to 28 U.S.C. § 2202; and (9) further equitable relief.

At the close of discovery, all Defendants moved for summary judgment on all claims. The district court concluded that Defendants were entitled to qualified immunity because Cummin did not suffer a cognizable deprivation of liberty sufficient to establish a constitutional violation and granted summary judgment on Plaintiffs' federal claims for malicious prosecution, declaratory judgment, and other relief. The district court declined to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims and dismissed those claims without prejudice. Cummin timely appeals the dismissal of his § 1983 his malicious prosecution claim.

III.

"We review the district court's grant of summary judgment de novo." *Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir. 2011) (italics omitted). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

IV.

Government officials are immune from civil liability under 42 U.S.C. § 1983, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quotation omitted). When a defendant raises qualified immunity, the burden is on the plaintiff to demonstrate that the official is not entitled to qualified immunity, *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006), by alleging "facts sufficient to indicate that the [government official's] act in question violated clearly established law at the time the act was committed." *Russo v. City of Cincinnati,* 953 F.2d 1036, 1043 (6th Cir. 1992).

To determine whether a government official is entitled to qualified immunity, we analyze (a) whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (b) whether that constitutional right was clearly established such that a "reasonable official would understand that what he is doing violates that right." *Saucier v. Katz,* 533 U.S. 194, 202 (2001) (citation and internal quotation marks omitted), *overruled on other grounds by Pearson,* 555 U.S. at 229.

The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006) (internal quotation marks omitted). To succeed on a Fourth Amendment malicious-prosecution claim, a plaintiff must prove: (1) "that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute"; (2) "that there was a lack of probable cause for the criminal prosecution"; (3) "that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as

understood in our Fourth Amendment jurisprudence, apart from the initial seizure"; and (4) "the criminal proceeding must have been resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (citations, internal quotations, and alterations omitted).

The only issue on appeal is whether Cummin suffered a deprivation of liberty. The district court found he did not:

> Cummin was not handcuffed, arrested, jailed, or taken into custody. Cummin left court after his arraignment on a $1,500 personal recognizance bond that did not require him to actually pay any money. And as conditions of his release on bond, Cummin agreed to appear before the court and to maintain his current address. These circumstances do not amount to a deprivation of liberty protected by the Fourth Amendment. *See Noonan v. Cnty. of Oakland*, 683 F. App'x 455, 462–63 (6th Cir. 2017) (holding that the plaintiff did not suffer a deprivation of liberty where he "was never arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions"); *Rapp v. Putman*, 644 F. App'x 621, 628 (6th Cir. 2016) (finding no deprivation of liberty where the plaintiff did not allege that he was seized or otherwise detained following the issuance of a citation and concluding that even if "being 'subject to the authority of the [court]'" is a Fourth Amendment seizure, such a right is not clearly established); *Billock v. Kuivila*, No. 4:11-cv-02394, 2013 WL 591988, at *6 (N.D. Ohio Feb. 14, 2013) ("Service with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation."); *Hopkins v. Sellers*, 2011 WL 2173859, at *9–10 (E.D. Tenn. June 2, 2011) (finding no deprivation of liberty where the plaintiff was never arrested, jailed, detained, required to post bond, or placed under travel restrictions); *Briner v. City of Ontario*, No. 1:07CV129, 2011 WL 866464, at *4 (N.D. Ohio Mar. 9, 2011) (finding no deprivation of liberty where the plaintiff argued that his deprivation was his being subject to the authority of the district and appellate courts).

[R.209 at PID 4780–81] (record citations omitted).

Cummin's primary argument relies on Justice Ginsburg's concurring opinion in *Albright v. Oliver*, 510 U.S. 266 (1994), and cases that have adopted its "continuing seizure" doctrine. In

*Albright*, Justice Ginsburg explained why a person on pre-trial release may continue to be "seized" under the Fourth Amendment:

> A person facing serious criminal charges is hardly freed from the state's control upon his release from a police officer's physical grip. He is required to appear in court at the state's command. He is often subject, as in this case, to the condition that he seek formal permission from the court (at significant expense) before exercising what would otherwise be his unquestioned right to travel outside the jurisdiction. Pending prosecution, his employment prospects may be diminished severely, he may suffer reputational harm, and he will experience the financial and emotional strain of preparing a defense.

*Id.* at 278 (Ginsburg, J., concurring).

Cummin's reliance is misplaced; the Supreme Court has not adopted the continuing seizure doctrine. *Wallace v. Kato*, 549 U.S. 384, 390, n.2 (2007). Nor has this court explicitly done so. As explained in *Johnson v. City of Cincinnati*, 310 F.3d 484, 492 (6th Cir. 2002):

> We have held that a Fourth Amendment seizure "continues throughout the time the person remains in the custody of the arresting officers," *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988), but we have not yet addressed whether the seizure could continue past this point. And, while we have held that the issuance of a traffic ticket did not, standing alone, constitute a seizure, *DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999), we have not yet explicitly addressed the "continuing seizure" doctrine advanced by Justice Ginsburg. *See Fox v. Van Oosterum*, 176 F.3d 342, 351 & n. 7 (6th Cir. 1999); *cf.* [*Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002)] (interpreting *McDowell* as endorsing the "continuing seizure" doctrine).

*Id*. We determined that we did not need to resolve the issue in *Johnson*, and to date have not decided whether to adopt the "continuing seizure" doctrine.[3] Thus, even if the conditions of

---

[3] In *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002), the court interpreted *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988), as endorsing the "continuing seizure" doctrine. However, both *McDowell* and *Phelps* concerned whether a person was still seized while in custody for the purposes of an excessive-force claim: "[T]he seizure that occurs when a person is

Cummin's release could constitute a seizure under this doctrine, Defendants "would still be entitled to qualified immunity because the particularized right alleged—the right to be free from a 'continuing seizure' by virtue of a pending criminal charge—is not clearly established." *Rapp v. Putman*, 644 F. App'x 621, 628 (6th Cir. 2016).

Cummin cites several cases in support of his assertion that the right was clearly established. But the cases he cites are distinguishable. In *Miller v. Maddox*, 866 F.3d 386, 393 (6th Cir. 2016), the accused was detained following her arrest, and was required to pay a $35 fee and participate in a pretrial-release program, which mandated that she attend scheduled court appearances and call the pretrial case manager every week until the case was resolved. This court found participation in the pretrial-release program constituted a deprivation of liberty. *Id.* at 393-394. And because the parties did not submit evidence regarding "how long, if at all, after acceptance into the [pretrial release] program Miller remained detained," a genuine issue of material fact remained whether Miller suffered a deprivation of liberty during that detention. *Id.* at 394. Here, Cummin was never detained, paid no fee,[4] and was required only to appear for scheduled court dates.

---

arrested continues throughout the time the person remains in the custody of the arresting officers." *Phelps*, 286 F.3d at 300 (quoting *McDowell*, 863 F.2d at 1306). Neither *McDowell* nor *Phelps* cite *Albright*, and no subsequent case holds the Sixth Circuit has adopted Justice Ginsburg's concurring opinion.

[4] Cummin argues his $1,500 recognizance bond required him to "essentially confess judgment in favor of the state, and to conform his conduct to government-imposed standards in order to forgo collection of that judgment." [Appellant's Br. at 31]. But the only "conduct" he needed to conform was keeping the court apprised of his current address and appearing when required at court, which included his arraignment, two pre-trial conferences, a motion hearing, and trial. This does not rise to the deprivation of liberty present in the other cases Cummin cites. *Cf. Nieves v. McSweeney*, 241 F.3d 46, 55 (1st Cir. 2001) (finding that posting of a recognizance bond and required attendance at several pretrial court appearances did not constitute seizure because "if the concept of a seizure is regarded as elastic enough to encompass standard conditions of pretrial release, virtually every criminal defendant will be deemed to be seized pending the resolution of the charges against him.")

The other circuit court cases Cummin relies on similarly fail to clearly establish that he suffered a deprivation of liberty. In both *Murphy v. Lynn*, 118 F.3d 938, 946 (2nd Cir. 1997), and *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998), the accused was subject to the condition that he remain in the state. In *Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1999), the Fifth Circuit ruled that a "summons to appear in court, coupled with the requirements that [the defendant] obtain permission before leaving the state, report regularly to pretrial services, sign a personal recognizance bond, and provide federal officers with financial and identifying information, diminished [the defendant's] liberty enough to render him seized." In *Black v. Montgomery Cty.*, 835 F.3d 358, 368 (3d Cir. 2016), the accused resided in California and, after posting $50,000 bail, was required to travel to Pennsylvania twelve times in the course of one year to attend all required court appearances: "Black was forced to travel this great distance— presumably at great expense—a dozen times." Finally, in *Schneyder v. Smith*, 653 F.3d 313 (3d Cir. 2011), the plaintiff was "a material witness who was jailed for weeks on end, even though the date of the trial in which she was to testify had been pushed back several months." *Id.* at 315.[5]

In contrast to the facts of those cases, Cummin faced no travel restrictions and was required only to "maintain [his] current address" and to "keep the court apprised of his[] current address." [R.159-1 at PID 3935]. Cummin argues that this condition "forbade [him] from living

---

[5] Cummin also cites an unpublished case, *Graw v. Fantasky*, 68 F. App'x 378, 382 (3d Cir. 2003), which found that, for the purposes of a 12(b)(6) motion to dismiss, alleging that the accused were "forced to defend themselves against baseless criminal charges" sufficiently alleged a seizure. Besides its distinguishable posture, the Third Circuit has distanced itself from that decision in finding similar release restrictions did not constitute a seizure. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 602 (3d Cir. 2005) ("*Graw* is distinguishable, but '[b]ecause only published opinions have precedential value, the court does not cite to its unpublished opinions as authority.'") (citation omitted).

where [he] wished," "one of the more basic and obvious rights of citizens." [Appellant's Br. at 32, 33]. But even if Cummin was prohibited from moving,[6] he cites no case supporting that this constituted a seizure and that this was clearly established.

Further, Cummin has cited no Sixth Circuit case finding the requirement that he attend five court appearances sufficient to constitute a seizure. In contrast, we have previously held, albeit in unpublished opinions, that requiring attendance at court proceedings does not constitute constitutional deprivation of liberty. *See Rapp*, 644 F. App'x at 628; *Noonan v. Cty. of Oakland*, 683 F. App'x 455, 463 (6th Cir. 2017), *cert. denied sub nom.*, No. 17-473, 2018 WL 1369141 (U.S. Mar. 19, 2018) ("[A]s most commonly applied in the Sixth Circuit, '[s]ervice with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation.'") (citations omitted). In the absence of additional, onerous conditions, we cannot say the requirement to appear in court constitutes a clearly established seizure. This is consistent with many of our sister circuits.[7]

---

[6] The check in the recognizance form's box stating "maintain current address" is in conflict with the apparently typed language stating: "The defendant is obligated to keep the court apprised of his/her current address." [R.159-1 at PID 3935]. The latter language suggests no restriction other than that Cummin inform the court of his current address. Normally, where there is a conflict, typed language prevails over printed-form language. Nevertheless, because we must view all inferences in the light most favorable to Cummin, *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010), we assume some restriction on his ability to abandon his current address.

[7] *See Nieves*, 241 F.3d at 55 (1st Cir. 2001); *Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) ("Karam was not charged with a felony. She was not required to report to anyone. All she had to do was show up for court appearances and obtain permission from the court if she wanted to leave the state. Obtaining such permission, while not burden-free, posed much less of a burden to her than it would to a person charged with a felony. And, with regard to the requirement to appear in court, that was no more burdensome than the promise to appear a motorist makes when issued a traffic citation. In sum, Karam's [] release restrictions were de minimus. No Fourth Amendment seizure occurred.") (internal citation omitted); *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004) (finding no seizure when the accused was required to pay a $1,000 bond, appear at her arraignment, and make two trips from New Jersey to

Because Cummin was not arrested, incarcerated, required to post bail or pay any bond, and was never subject to any travel restrictions, we cannot conclude that a reasonable government official would understand that the conditions of Cummin's release constituted a seizure under the Fourth Amendment.

V.

For the foregoing reasons, we **AFFIRM.**

---

Florida to defend herself in court); *DiBella*, 407 F.3d at 602 (finding the accused did not suffer a seizure because they "were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services."); *Bielanski v. County of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) (holding that the issuance of a summons by the prosecutor, an order not to leave Illinois without the permission of the court, and a required interview with a probation officer did not rise to the level of a Fourth Amendment seizure); *Harrington v. City of Nashua*, 610 F.3d 24, 32 (1st Cir. 2010) (finding no seizure where the accused was required to attend court proceedings, notify the court of any change in address, refrain from committing crimes, and forebear from consuming either controlled substances or excessive quantities of alcohol).