RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0170p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ANDREA MILLER,

　　　　　　　　　　*Plaintiff-Appellant,*

*v.*

WOODSTON MADDOX,

　　　　　　　　　　*Defendant-Appellee.*

No. 17-5021

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:13-cv-01270—Kevin H. Sharp, District Judge.

Decided and Filed: August 3, 2017

Before: MOORE, STRANCH, and DONALD, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Kyle F. Mothershead, Nashville, Tennessee, R. Andrew Free, Nashville, Tennessee, for Appellant. Keli J. Oliver, Melissa Roberge, DEPARTMENT OF LAW OF THE METROPOLITAN DEPARTMENT OF NASHVILLE AND DAVIDSON COUNTY, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

　　　BERNICE BOUIE DONALD, Circuit Judge. Andrea Miller was arrested, charged, and indicted on charges of reckless driving and resisting arrest, based on false statements made by officer Woodston Maddox. The district court granted summary judgment in Maddox's favor on Miller's malicious prosecution claim under 42 U.S.C. § 1983. We conclude that Maddox is not

entitled to judgment as a matter of law and is not entitled to either absolute or qualified immunity.  Accordingly, we **REVERSE** the district court's judgment.

## I.

Miller brought a Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983 against Maddox arising from her alleged reckless driving and resisting of arrest.  The district court granted Maddox's motion for summary judgment and dismissed Miller's complaint, reasoning that Miller could not establish an exception to the general rule that the issuance of an indictment conclusively establishes probable cause, and that Maddox was entitled to absolute immunity from a § 1983 suit based on statements he made to the night court commissioner.

## II.

This court reviews a district court's grant of summary judgment *de novo*.  *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party bears the initial burden of establishing that there are no genuine issues of material facts, which it may accomplish "by demonstrating that the nonmoving party lacks evidence to support an essential element of its case."  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).  In response, the nonmoving party must present "significant probative evidence" that will reveal that there is more than "some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).  The mere existence of a scintilla of evidence in support of the nonmovant's position will not suffice to avoid summary judgment.  *Anderson*, 477 U.S. at 252.

## III.

We have recognized that a plaintiff may bring a malicious prosecution claim under the Fourth Amendment based on a defendant officer's wrongful investigation, prosecution,

conviction, and incarceration of a plaintiff. *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006). To succeed on such a claim, Miller must establish that (1) a criminal prosecution was initiated against her and Maddox made, influenced, or participated in the prosecution decision; (2) there was no probable cause to support the charges; (3) as a result of the legal proceedings, Miller suffered a deprivation of liberty "apart from the initial seizure"; and (4) the criminal proceedings ended in Miller's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). The last element is not in dispute in this case.

a.

Miller first insists that because, in affirming the denial of Maddox's motion to dismiss, this court found in her favor on the first and third elements, the law of the case doctrine conclusively establishes that those elements are met and precludes our review of those issues on summary judgment.

Initially, despite Miller's claims to the contrary, our prior decision did not resolve whether her allegations of post-process detention deprived her of liberty so as to satisfy the third element. Rather, it mentioned, in passing when rejecting Maddox's argument that Miller's claim should be construed as one for false imprisonment, that "the detention that Miller challenges is the three-to-four-hour period of confinement that resulted from the allegedly wrongful institution of this legal process." Order, R. 20 at 4, Case No. 14-6216. We noted that this was "the exact harm that a malicious-prosecution claim is intended to remedy." *Id.* We therefore, did not resolve the third element.

Furthermore, the law of the case doctrine does not prohibit our review of these issues. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Scott v. Churchill*, 377 F.3d 565, 569–70 (6th Cir. 2004) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Importantly, however, this doctrine is intended to enforce a district court's adherence to an appellate court's judgment, and so is applied only loosely when we reconsider our own decisions. *Williams v. McLemore*, 247 F. App'x 1, 7 (6th Cir. 2007) (citing *United States v. Dunbar*, 357 F.3d 582, 592 (6th Cir. 2004)); *see also Patterson v. Haskins*, 470 F.3d

645, 660–61 (6th Cir. 2006) (noting the prudential nature of the law of the case doctrine). Consistent with this latter principle, we have also held that this court's prior "holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery." *McKenzie v. Bellsouth Tellecomms, Inc.*, 219 F.3d 508, 513 (6th Cir. 2000); *see also Williams*, 247 F. App'x at 7 (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)) (observing that the denial of qualified immunity in a motion to dismiss does not trigger the law of the case doctrine following the denial of the defendant's motion for summary judgment). So we may consider issues not expressly or impliedly decided by the previous opinion. *McKenzie*, 219 F.3d at 513 (quoting *Jones v. Lewis*, 957 F.2d 260, 262 (6th Cir. 1992)). Given the prudential nature of the law of the case doctrine and the fact that we previously decided these issues under a standard more favorable to Miller, we conclude that this doctrine does not bar us from revisiting these issues.

We now turn to the three elements of malicious prosecution at issue in this case.

b.

To succeed on her claim, Miller must first establish that a criminal prosecution was initiated against her and that Maddox made, influenced, or participated in the prosecution decision. *Sykes*, 625 F.3d at 308. Neither party disputes that a criminal prosecution was initiated against Miller. Rather, the dispute centers on whether Maddox made, influenced, or participated in the prosecution decision. "To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Sanders v. Jones*, 845 F.3d 721, 731 (6th Cir. 2017) (quoting *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015)). In *Sykes*, for instance, we concluded that an officer influenced or participated in the decision to prosecute the plaintiffs where the officer gave false testimony at a preliminary hearing, which was material because the officer was the only one to testify. 625 F.3d at 312–14. We further held that a second officer likewise participated or influenced the decision to prosecute the plaintiffs when the officer made misrepresentations and omissions in his application for an arrest warrant and investigative report, which were relied on by the prosecutors in proceeding against the plaintiffs. *Id.* at 314–17.

Here, Maddox swore as a "prosecutor" in an affidavit for an arrest warrant that Miller ran a stop sign, then proceeded to speed down the street, became verbally confrontational when Maddox asked her to get out of the vehicle, then jerked and twisted away from him when he tried to physically remove her. As a result, the night commissioner issued an arrest warrant. Later, at a preliminary hearing, Maddox testified to these same facts. Based on Maddox's testimony, the court found sufficient evidence to bind Miller's case over to the grand jury. It appears that Maddox was the only witness to testify during that hearing. Although it may be true that Maddox never directly spoke with the prosecutor regarding the case, because Maddox swore out the warrant affidavit that was submitted to the night commissioner and was the only witness to testify in the preliminary hearing, we conclude that he at least influenced or participated in the prosecution decision. *See id.* at 312–17.

c.

We next turn to the issue of whether there was probable cause to support the charges. The district court resolved the claim on this element, reasoning that Miller could not rebut the general rule that an indictment conclusively establishes probable cause. However, our recent decision in *King v. Harwood*, 852 F.3d 568 (6th Cir. 2017), which creates an exception to that general rule, calls the district court's conclusion into question. In light of *King*, we conclude that the district court erred in granting summary judgment on this ground.

Shortly prior to our decision in *King*, we decided *Sanders*, which observed the apparent tension in our jurisprudence on the element of probable cause in a malicious prosecution case. There, we noted that an indictment, fair on its face, generally conclusively establishes the existence of probable cause, but also observed the exception to that rule when a defendant knowingly or recklessly presents false testimony to the grand jury to obtain an indictment. *Sanders*, 845 F.3d at 728–29. We examined the tension that this exception creates with the Supreme Court's decision in *Rehberg v. Paulk*, 566 U.S. 356 (2012), which held that absolute immunity extends to false testimony given by a grand jury witness. *Sanders*, 845 F.3d at 729–30. In particular, we analyzed "the tensions between *Rehberg* and our malicious prosecution cause of action to determine whether malicious prosecution remains a viable claim where a

plaintiff was indicted by a grand jury, given that *Rehberg* lends absolute immunity to grand jury testimony." *Id.* at 731.

The plaintiff in *Sanders* argued that the officer was not entitled to absolute immunity because her malicious prosecution claim was not based on the officer's grand jury testimony, but rather on his allegedly false police report. *Id.* at 730. We held that although the officer was not entitled to absolute immunity for his police report, the statements made therein could not overcome the presumption of probable cause because they could not be material to the grand jury's finding of probable cause. *Id.* at 732–33. We so reasoned because "[f]alse statements could affect the grand jury's determination of probable cause only if introduced through grand jury testimony, and if that testimony is by the defendant, he is absolutely immune under *Rehberg*." *Id.*

In *King* we recognized the "harsh" result produced by *Sanders*, noting that to avoid that outcome, we would need to create an exception to the rule that an indictment conclusively establishes probable cause. *King*, 852 F.3d at 587. So, we created an exception, holding that:

> where (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony . . . the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive.

*Id.* at 587–88. We, therefore, look first to whether the *King* exception applies to create a mere rebuttable presumption of probable cause.

First, Maddox accepts as true for the purpose of this appeal that his statements that Miller was speeding and subsequently resisted arrest were false. We conclude that these false statements were committed in the course of setting the prosecution of Miller in motion because, as discussed above, Maddox as the complaining witness filed the affidavit that led the night commissioner to issue a warrant for Miller. Additionally, he was the only witness at the preliminary hearing where it was determined there was probable cause to bind Miller's case over until trial. While, as Maddox insists, there may not be evidence that the "fabricated evidence

[was] presented to the grand jury and relied upon in securing an indictment," R. 25, Appellee Br. at 18, his false statements were instrumental in the stages leading up to the ultimate indictment, so set the prosecution in motion.

Next, the false statements were material to Miller's prosecution because there is no indication of evidence in the record that would allow the charges against Miller to proceed to the grand-jury stage absent Maddox's false testimony. Finally, Maddox's false statements do not consist solely of grand jury testimony. To the contrary, as Maddox emphasizes, he did not testify during the grand jury proceedings and there is nothing but speculation to suggest that Maddox's statements were used during these proceedings.

Accordingly, we conclude that the *King* exception applies to overcome the conclusive presumption that an indictment by the grand jury establishes probable cause. So, Miller is entitled to rebut the presumption of probable cause.

As noted, Maddox accepts for the purposes of his appeal that Miller did not physically resist his attempts to remove her from the vehicle. Maddox points to no other evidence in the record supporting probable cause for resisting arrest, so we conclude that there is no probable cause to support the charge against Miller for reckless driving in violation of Tenn. Code Ann. § 39-16-602.[1] Maddox also accepts that Miller was not speeding. The only other evidence to support the charge of reckless driving in violation of Tenn. Code Ann. § 55-10-205[2] is that Miller ran a stop sign. However, though his affidavit states that Maddox had "a clear unobstructed view" of Miller running the stop sign, based on the dash-cam video, no stop sign is visible that would indicate where Miller was supposed to stop. There is, therefore, at least a

---

[1]"It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer . . . from effecting a stop, frisk, halt, arrest or search  of any person . . . ." Tenn. Code Ann. § 39-16-602(a).

[2]"Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving." Tenn. Code Ann. § 55-10-205(a).

genuine issue of material fact regarding whether Maddox had probable cause to arrest Miller for reckless driving.[3]

d.

Lastly, Miller must demonstrate not just that she was seized, but that she suffered a deprivation of liberty "apart from the initial seizure." *Sykes*, 625 F.3d at 308–09. The record reflects that after Miller participated in the video conference with the night court commissioner who found probable cause, she remained detained for approximately forty-five minutes.[4] Thereafter, she paid a $35[5] fee to be released and was required to participate in a pretrial release program, which mandated that she show up on time for all court appearances and call the pretrial case manager every week until the case was resolved. Participation in this program was an alternative to Miller posting a $3,000 bond.

Miller's participation in the pretrial release program constitutes a deprivation of liberty separate from the initial seizure. In *Noonan v. County of Oakland*, we concluded that the plaintiff was not deprived of his liberty apart from his initial seizure because the plaintiff was "never arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions." No. 15-2192, 2017 WL 1102912, at *7–8 (6th Cir. Mar. 24, 2017) (unpublished). In that case, we concluded that the aggravation and costs associated with hiring an attorney and reputational harms were not "a deprivation of liberty as understood in our Fourth Amendment jurisprudence." *Id.* at *8. However, in *Johnson v. Moseley*, we "assume[d] that" conditions of pretrial release "represent a sufficient deprivation of . . . liberty to satisfy the third element" of

---

[3]On appeal, Maddox also insists that the determination of probable cause at the preliminary hearing definitively establishes probable cause for the purposes of Miller's malicious prosecution claim. However, before the district court, Maddox argued only that he was absolutely immune from testimony given at the preliminary hearing and that the indictment conclusively establishes probable cause. Maddox has, therefore, waived appellate review of this argument that was not presented before the district court. *Fed. Trade Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) ("[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal." (quoting *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006))).

[4]It appears that Miller contends that only the forty-five minutes she spent after the video conference with the commissioner, not the hour or so she spent beforehand, constituted a deprivation apart from the initial seizure.

[5]Miller testified at her deposition that she paid a $45 fee, but clarifies in her briefs on appeal that the fee was $35.

*Sykes*. 790 F.3d 649, 654 (6th Cir. 2015). Also, in *Johnson v. City of Cincinnati*, we indicated that imposing restrictions designed to compel court appearance, "such as obligations to post bond, attend court hearings, and contact pretrial services" could constitute a seizure. 310 F.3d 484, 493 (6th Cir. 2002) (collecting cases).

Miller was not only arrested and incarcerated, but also required to pay $35 to be accepted into the pretrial program, could have been required to post a $3,000 bond, was required to attend court appearances, and required to check in with a case manager once per week. This case involves precisely the factors that were missing in *Noonan* and that *Johnson v. City of Cincinnati* suggested could constitute a deprivation of liberty apart from the initial seizure. Additionally, after the night commissioner signed the arrest warrants and instructed that Miller could be released after paying the $35 fee, Miller was detained for approximately an additional forty-five minutes while being screened for the program. The Conditions of Release Order states that Miller "SHALL be released" upon being accepted by the Pre-Trial Services Department for supervision. Conditions of Release Order, ECF No. 67-18, Page ID 607. Any extension of a seizure beyond the time reasonably required to carry out the seizure's purpose is unlawful. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1613, 1616 (2015) (concluding that the extension of a traffic stop seven or eight minutes beyond the time reasonably required to complete the stop's mission was unlawful); *see also Manuel v. City of Joliet*, 137 S. Ct. 911, 918–19 (2017) (confirming the applicability of the Fourth Amendment to pretrial detention that occurs after the legal process has begun). The purpose of Miller's seizure was to determine probable cause and the conditions of her release. To the extent that Miller was detained for any amount of time after being accepted into the pretrial release program, that portion of her detention prolonged the seizure beyond the point necessary to carry out the seizure's purpose. The parties do not point us to any place in the record stating how long, if at all, after acceptance into this program Miller remained detained. Accordingly, we find that there is a genuine dispute of material fact with respect to whether Miller suffered a deprivation of liberty by being detained past the time necessary to enroll her in the pretrial services program.

For the aforementioned reasons, Maddox has not established the absence of genuine issues of material fact such that he is entitled to judgment as a matter of law on Miller's malicious prosecution claim.

IV.

As the district court concluded, Maddox contends that he is entitled to absolute immunity for his false statements. We disagree.

In *Briscoe v. LaHue*, the Supreme Court upheld absolute immunity from § 1983 suits for a police officer's testimony, even acknowledging that this could result in defendants being falsely convicted by knowing false testimony given by police officers. 460 U.S. 325, 341–46 (1983); *see also Rehberg*, 566 U.S. at 369, 375 (holding that a witness' false testimony in a grand jury proceeding is entitled to the same absolute immunity under § 1983 as that of a trial witness). However, the Court has gone on to distinguish the acts of an officer who simply falsely testifies in grand jury proceedings, and one whose false testimony plays a more active role in the initiation of litigation. In *Rehberg* for instance, the Court declared that "[o]f course, we do not suggest that absolute immunity extends to *all* activity that a witness conducts outside of the grand jury room. For example, we have accorded only qualified immunity to law enforcement officials who falsify affidavits." *Id.* at 370 n.1. It reasoned that by simply "testifying before a grand jury, a law enforcement officer does not perform the function of applying for an arrest warrant." *Id.* at 370–71 (comparing a grand jury witness, who is entitled to absolute immunity, with a complaining witness, who is not because the complaining witness procures an arrest warrant or otherwise "set[s] the wheels of government in motion by instigating a legal action" (citations omitted) (alteration in original)); *see also Kalina v. Fletcher*, 522 U.S. 118, 129–31 (1997) (concluding that absolute immunity does not extend to testifying in an affidavit for a search warrant regarding the truth of the underlying facts); *Malley v. Briggs*, 475 U.S. 335, 340–45 (1986) (observing that we have accorded only qualified immunity to law enforcement officials who falsify affidavits). Therefore, an officer is not absolutely immune when he makes false statements in a warrant affidavit.

Maddox seems to suggest that he cannot be held liable for the false statements made in the warrant affidavits because his testimony before the judicial commissioner was based on the false statements. His logic is apparently that because he is absolutely immune from § 1983 liability based on his testimony, that he is also immune for the false statements previously made in the affidavits. In support of his proposition, he relies on *Sanders*. However, *Sanders* does not support his argument. In fact, *Sanders* held that the officer was *not* entitled to absolute immunity for his police report. *Sanders*, 845 F.3d at 733. In *Sanders*, we went on to note that absolute immunity would not extend to "falsifying affidavits and fabricating evidence." *Id.* at 734. There is a "thin but conspicuous line between, on the one hand, law-enforcement officers who only provide grand-jury testimony . . . and, on the other hand, law-enforcement officers who either (1) set the wheels of government in motion by instigating a legal action, or (2) falsify affidavits or fabricate evidence concerning an unsolved crime." *King*, 852 F.3d at 584 (citations omitted) (internal quotation marks omitted). We confirmed in *King* that only qualified immunity extends to officers who engage in the latter acts. *Id.*; *see also Spurlock v. Satterfiled*, 167 F.3d 995, 1001 (6th Cir. 1999) ("[A]bsolute testimonial immunity does not 'relate backwards' to 'protect a defendant for any activities he allegedly engaged in prior to taking the witness stand for his grand jury testimony.'" (alteration omitted) (quoting *Mastroianni v. Bowers*, 160 F.3d 671, 677 (11th Cir. 1998))). We conclude, therefore, that Maddox is not entitled to absolute immunity for the false statements he made in his warrant affidavit.

V.

Lastly, we address Maddox's argument that he is entitled to qualified immunity. Government officials are entitled to qualified immunity for their actions unless (1) the plaintiff has established a violation of a constitutional right, and (2) the right at issue was clearly established at time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The key inquiry is whether the defendants had "fair warning" of the unconstitutionality of their actions. *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005). The right also "must be clearly established in a 'particularized' sense, so that 'the contours of the right' are clear enough for any reasonable official in the defendants' position to know that what the official is doing violates that right." *Danese v. Asman*, 875 F.2d 1239, 1242 (6th Cir. 1989) (quoting *Anderson v. Creighton*,

483 U.S. 635, 640 (1987)). "In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Maddox spends a considerable portion of his brief illustrating why it is not clear that he should be liable for malicious prosecution, thus reasoning that he is entitled to qualified immunity. Yet, his claim that the contours of our jurisprudence concerning malicious prosecution are not entirely clear misses the point. Our inquiry is whether Maddox's alleged actions—arresting and detaining Miller based on false pretenses and then seeking an arrest warrant based on these false statements—violated Miller's clearly established constitutional rights. We conclude that they did.

In *Spurlock* for instance, we determined that the plaintiffs' allegations were sufficient to allege a violation of their constitutional rights where their complaint stated "that [the defendants] wrongfully investigated, prosecuted, convicted and incarcerated them; that [an officer] fabricated evidence and manufactured probable cause; that they were held in custody, despite a lack of probable cause to do so; and that [an officer] and others conspired to maliciously prosecute and convict them." 167 F.3d at 1005. Turning to whether their rights were clearly established at the time, we held that "a reasonable police officer would know that fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures." *Id.* at 1006. Likewise, we concluded that "a reasonable police officer would be on notice that unlawfully detaining a suspect, despite the fact that the evidence used to detain that individual was fabricated, would also be unlawful." *Id.* at 1006–07. Thus, we held that the defendants were not entitled to qualified immunity. *Id.* at 1007. Similarly, in *King* we held that "individuals have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has made, influenced or participated in the decision to prosecute the plaintiff by, for example, knowingly or recklessly making false statements that are material to the prosecution either in reports or in affidavits filed to secure warrants." 852 F.3d at 582–83 (quoting *Webb*, 789 F.3d at 660, 665) (internal quotation marks omitted). In light of the foregoing, we conclude that Miller had a clearly established Fourth

Amendment right to be free from seizure and prosecution based on fabricated evidence, and that Maddox violated these rights by using his false statements as a basis for establishing probable cause, resulting in the initiation of prosecution against her. Maddox is, therefore, not entitled to qualified immunity.

## VI.

For the reasons discussed above, we **REVERSE** the grant of summary judgment in Maddox's favor and **REMAND** for further proceedings consistent with this opinion.