RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0281p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

REUBEN JELANI ADAMS (22-cv-00241); ROBERT JUTAHN MCCLAIN, (5:22-cv-00242); ANDRU JACKSON PHILLIPS (5:22-cv-00243); DEVITO CYN'CER TISDALE (5:22-cv-00244); JOEL DANDRE WILLIAMS (5:22-cv-00245),

> *Plaintiffs-Appellants*,

*v.*

LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT; CORY B. VINLOVE, DONNELL GORDON, and LAWRENCE WEATHERS, Lexington Police Officers, in their individual capacities,

> *Defendants-Appellees*.

No. 24-6028

─────────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
Nos. 5:22-cv-00241–245—Gregory F. Van Tatenhove, District Judge.

Argued:  June 11, 2025

Decided and Filed:  October 10, 2025

Before:  BATCHELDER, GIBBONS, and BLOOMEKATZ, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Amy Robinson Staples, LOEVY & LOEVY, Chicago, Illinois, for Appellants. Jason P. Renzelmann, FROST BROWN TODD LLP, Louisville, Kentucky, for Appellees. **ON BRIEF:**  Amy Robinson Staples, Elliot Slosar, LOEVY & LOEVY, Chicago, Illinois, for Appellants.  Jason P. Renzelmann, FROST BROWN TODD LLP, Louisville, Kentucky, Medrith Lee Norman, FROST BROWN TODD LLP, Lexington, Kentucky, for Appellees.

———————————

## OPINION

———————————

JULIA SMITH GIBBONS, Circuit Judge.   Plaintiffs are five football players at the University of Kentucky ("UK") who were subject to racial taunts and physical violence at a fraternity-sponsored party.   Yet after the altercation, defendant Detective Cory Vinlove, a Lexington police officer, initiated criminal charges against plaintiffs.   A grand jury eventually refused to indict plaintiffs but, by then, news of the investigation had already hurt plaintiffs' reputations and careers.

After being cleared of wrongdoing, plaintiffs sued Vinlove, Sergeant Donnell Gordon, Lexington Police Chief Lawrence Weathers, and Lexington-Fayette County Urban Government ("LFCUG"), asserting various federal and state-law claims.   Defendants moved to dismiss all claims except a state malicious prosecution claim.   The district court granted the motion, reasoning that as damaging as defendants' actions were, they were not deprivations of liberty under the Fourth Amendment as required for the federal claims.   The district court also dismissed plaintiffs' state-law claims, finding that the alleged facts failed to state a claim under state law. We now affirm the district court.

I.

Plaintiffs Reuben Adams, Robert McClain, Andru Phillips, Devito Tisdale, and Joel Williams were student-athletes and members of the UK football team.   On the night of March 6, 2021, and into the morning of March 7, 2021, the Alpha Sigma Phi fraternity sponsored a party.[1] Adams and Williams believed that they were invited to the party and arrived at the party location together between 1:00 and 2:00 am.   At first, the football players were welcomed in but as they walked through the home, several white fraternity members and guests hurled racial epithets at them including referring to them as "n*****s."   DE 1, Compl., Page ID 8.[2]   Adams and

———————————

[1]The complaint alleges that the Alpha Sigma Phi fraternity hosted a party at 201 Forest Drive, where the social chair of the fraternity's chapter lived.

[2]All docket entries, unless otherwise indicated, are from Adams's case, No. 5-22-cv-00241.

Williams promptly left, but before Williams could leave, members of the fraternity pushed him toward the back door. Adams and Williams ran out of the house and drove away.

The other three plaintiffs also had encounters at the home. Tisdale arrived at the house on his own, believing it was an open party. As soon as Tisdale entered, he was ambushed and physically assaulted while attendees at the party hurled racial epithets at him. Tisdale defended himself before backing out of the home and returning to his residence. Phillips also believed the party was open to everyone. As Phillips arrived at the party, he received a text message, informing him that Williams had been "jumped." Phillips walked up to the door of the house to check on his friends. An attendee of the party yelled at Phillips to leave while Phillips heard racial slurs being shouted in the house. Phillips quickly left. McClain also received a text message informing him that Williams had been "jumped." After receiving this message, McClain left his residence and attempted to drive to the party but could not enter because, by the time he arrived, the location was blocked by law enforcement.

After several plaintiffs left the party, a member of the fraternity called the police to report an alleged assault and burglary. When the police arrived, fraternity members told the police that the football players brandished knives and firearms. Detective Vinlove took over the investigation. And despite gathering information that would suggest that the football players were the ones who were assaulted, Vinlove fabricated information in an affidavit to gain access to Adams's cellphone.

At the same time, UK conducted its own investigation and cleared Adams and all his teammates of any wrongdoing. Nonetheless, Vinlove—despite having access to information which indicated the Black football players were victims of racism at the hands of several white fraternity members—charged the Black teammates with burglary, stating that the teammates forced entry into the home before physically assaulting its occupants. Sergeant Gordon of the Lexington Police Department issued a press release with these allegations, which were picked up nationwide and hurt the football players' reputations. Vinlove continued to present these false allegations to a grand jury. In the end, the grand jury rejected Vinlove's false allegations against plaintiffs and returned a no true bill and dismissed all charges against the teammates. Of course, by then, plaintiffs had suffered greatly from the whole ordeal.

Plaintiffs then brought five individual lawsuits against Vinlove, Gordon, Weathers, and LFCUG. The complaints asserted the following claims: (1) a 42 U.S.C. § 1983 claim for malicious prosecution; (2) a § 1983 claim for fabrication of evidence under the Fourth Amendment; (3) a § 1983 claim for supervisory liability; (4) a § 1983 claim for failure to intervene; (5) a § 1983 claim for conspiracy to deprive constitutional rights; (6) a § 1983 claim for municipal liability against LFCUG; (7) a state-law claim for malicious prosecution; (8) a state-law negligent supervision claim; (9) a state-law defamation claim; (10) a state-law respondeat superior claim against LFCUG; and (11) a state-law negligent hiring claim against LFCUG. The district court consolidated all five actions, with Adams's case being the lead.

Defendants jointly moved to dismiss nearly all claims against them for failure to state a claim. Defendants did not move to dismiss plaintiffs' state-law malicious prosecution claim against Vinlove. The district court granted defendants' motion to dismiss in full. First, the district court noted that plaintiffs withdrew all their conspiracy claims and all state-law claims against LFCUG in their response to the motion to dismiss. This left seven claims to be discussed: federal malicious prosecution, fabrication of the evidence, supervisory liability, failure to intervene, municipal liability, state-law malicious prosecution against Gordon and Weathers, and defamation. As for the federal claims, the district court concluded that plaintiffs failed to plead any liberty deprivations under the Fourth Amendment so they all must be dismissed. As for the state-law claims, the district court dismissed them under Federal Rule of Civil Procedure 12(b)(6), finding that plaintiffs had (1) failed to allege Gordon and Weathers were involved with the prosecution; (2) provided no facts that suggested that Gordon or Weathers knew or should have known that Vinlove would fabricate information and wrongfully pursue criminal proceedings; and (3) failed to specifically allege any non-privileged defamatory statements. After requesting briefing from the parties on whether it had jurisdiction over the surviving state law claim, the district court found that it no longer had subject matter jurisdiction over the remaining state-law malicious prosecution claim against Vinlove and dismissed the case.[3] Plaintiffs now appeal.

---

[3]Both parties argued that the district court should retain jurisdiction over the pending state-law claim against Vinlove, but the district court held that parties cannot stipulate to subject matter jurisdiction and that "federal

II.

A "district court's dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure" is reviewed de novo. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 395–96 (6th Cir. 2016). To survive a motion to dismiss, the plaintiff must "allege 'facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level.'" *Id.* at 396 (quotation omitted). The complaint must also contain "direct or inferential allegations respecting *all* the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (emphasis added). Conclusory allegations or legal conclusions "masquerading as factual conclusions will not suffice[.]" *Id.*

III.

Before us, along with various state claims, plaintiffs assert federal claims for malicious prosecution and fabrication of evidence under the Fourth Amendment. As for the federal claims, plaintiffs also seek liability through theories of supervisory liability, failure to intervene liability, and *Monell* liability. However, because plaintiffs fail to plead a deprivation of liberty, as required by the Fourth Amendment, their federal claims fail.

With respect to state-law defamation, we agree with plaintiffs that the allegedly defamatory police press release merely reiterated the fabricated allegations made in Vinlove's charging documents. Thus, the contents of these documents fall within the scope of the judicial statements privilege under Kentucky state law. Accordingly, we affirm the district court's dismissal of plaintiffs' defamation claim.

Lastly, regarding the state-law malicious prosecution claim, plaintiffs failed to allege that Gordon or Weathers had any influence on the decision to prosecute them. Accordingly, we affirm the district court's dismissal of plaintiffs' state-law malicious-prosecution claim against those defendants.

---

courts shoulder an affirmative obligation to assess jurisdiction in every case." DE 30, Order on Jurisdiction, Page ID 284.

A.        Because plaintiffs have not pled a deprivation of liberty under the Fourth Amendment their malicious prosecution claim fails.

A Fourth Amendment malicious prosecution claim consists of four elements. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). First, the plaintiff must prove that "a criminal prosecution was initiated against him and that the defendant 'made, influenced, or participated in the decision to prosecute.'" *Wright v. City of Euclid*, 962 F.3d 852, 875 (6th Cir. 2020) (quoting *Sykes*, 625 F.3d at 308)). Second, there must be "a lack of probable cause for the criminal prosecution." *Id.* Third, "as a consequence of a legal proceeding," plaintiff must have "suffered a deprivation of liberty apart from the initial seizure." *Id.* at 875–76. And fourth, the criminal proceeding must have been resolved in his favor. *Id.* at 876.

1.        *The minimal level of criminal proceedings alleged by plaintiffs are not a deprivation of liberty under this court's caselaw.*

The parties dispute the third element: deprivation of liberty. According to plaintiffs, they have been deprived of liberty because they suffered (1) a threat of imprisonment; (2) being summoned for an arraignment and compelled to testify before a grand jury; (3) the seizure of their personal property and information; (4) student misconduct hearings; (5) the loss of educational and athletic opportunities; (6) reputational harm; and (7) emotional distress. Plaintiffs have suffered greatly in general, and we are without doubt that the allegations contained in plaintiffs' complaints are deeply troubling and, if true, reflect extremely poorly upon the state actors involved. But not every horrible occurrence is a constitutional violation and plaintiffs' suffering cannot be appropriately framed as a "deprivation of liberty" under the Fourth Amendment as understood by this court and the Supreme Court.

First, the risk of future imprisonment does not by itself amount to a deprivation of liberty under the Fourth Amendment. To say that plaintiffs faced potential imprisonment if convicted is another way of saying that they faced serious criminal prosecution. But a deprivation of liberty is not sufficiently pled just by alleging—as plaintiffs do here—that criminal proceedings were brought against the victim. *See Sykes*, 625 F.3d at 308–09. Similarly, the mere possibility of post-conviction imprisonment is not enough to create a pretrial liberty deprivation. *Id.*

(explaining that the plaintiff must have actually suffered a liberty deprivation "as a consequence of a legal proceeding").

Second, being arraigned or summoned to testify in court also does not create a deprivation of liberty. Instead, "[s]omething more is required, and this circuit has held that 'service with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation.'" *Wright*, 962 F.3d at 876–77 (quoting *Noonan v. Cnty. of Oakland*, 683 F. App'x 455, 463 (6th Cir. 2017)); *see also Cummin v. North*, 731 F. App'x 465, 473 (6th Cir. 2018).

Third, the temporary seizure of a phone for evidence gathering is not a deprivation of liberty. The caselaw on liberty deprivation concerns personal restrictions on a plaintiff and not necessarily costs or temporary seizures of property. *See id.* at 463 ("Nor do we believe that the withholding of Noonan's car and the incurrence of defense costs satisfy the 'deprivation of liberty' element as we have construed it, and we find no precedent that persuades us otherwise.").

Fourth, being subject to *student* misconduct proceedings is not a deprivation of liberty, as being subjected to quasi-judicial proceedings by itself is not a deprivation of liberty. *See Wright*, 962 F.3d at 877.

Fifth, the harms that arise from loss of reputation are not a deprivation of liberty under the Fourth Amendment. Reputational harms can, when combined with the loss of another protected interest, support a Fourteenth Amendment due process claim. *See Paul v. Davis*, 424 U.S. 693, 710–12 (1976). But in the Fourth Amendment context, malicious prosecution requires a deprivation akin to a "seizure of [the plaintiff's] person." *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024). For example, in *Noonan*, the false charges against the plaintiff caused him "substantial embarrassment, personally and professionally," and "inhibited his practice as a lawyer," but that was not enough to create a liberty interest protected by the Fourth Amendment. 683 F. App'x at 462, 463. In sum, we are largely looking for deprivations of the plaintiffs' freedom of movement; without them there cannot be a seizure under the Fourth Amendment. *See Cummin*, 731 F. App'x at 473.

Sixth, emotional distress is not a Fourth Amendment deprivation of liberty. Emotional distress is a natural result of false prosecutions and for the same reasons discussed above is not a deprivation of liberty. Indeed, being required to attend criminal proceedings for a crime one did not commit would distress anyone. Yet not every baseless prosecution results in a deprivation of liberty. *See Wright*, 962 F.3d at 877; *Noonan*, 683 F. App'x at 462. And as with reputation, protecting mental health under the Fourth Amendment would significantly upend our understanding of Fourth Amendment doctrine. Although emotional harm (like the other harms detailed above) is certainly relevant to *damages* resulting from a malicious prosecution, it is not enough to establish a malicious prosecution *claim* because it is not a deprivation of liberty.

In sum, "the most evident deficiency in plaintiff[s'] complaint is [their] failure to allege the third element, a 'deprivation of liberty.'" *Rapp v. Putman*, 644 F. App'x 621, 628 (6th Cir. 2016) (quoting *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2016)). "Nowhere in [their] complaint do[] plaintiff[s] allege that [they were] 'seized' or otherwise detained[.]" *Id.* at 628. Malicious prosecution claims are jurisprudentially about seizure of the plaintiff before the trial. *See Fisher v. Dodson*, 451 F. App'x 500, 502 (6th Cir. 2011). Unlike cases where we have found a deprivation of liberty, plaintiffs here do not allege that they were ever arrested, incarcerated, required to post bail or bond, or subject to any travel restrictions. *See, e.g.*, *Miller v. Maddox*, 866 F.3d 386, 393 (6th Cir. 2017) ("[Plaintiff] was not only arrested and incarcerated, but also required to pay $35 to be accepted into the pretrial program, could have been required to post a $3,000 bond, was required to attend court appearances, and required to check in with a case manager once per week."); *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015). While the harm plaintiffs have suffered here is distressing, it is not a deprivation of liberty under the Fourth Amendment. Or, as then Judge Sotomayor put it, plaintiffs here "were never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (Sotomayor, J.) (citing *United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980)).

It is true that whether a liberty deprivation exists is hazy in some cases. But when, as here, the alleged deprived liberty interest is, in essence, the damage of having criminal proceedings brought against you under false pretenses, it is not a deprivation of liberty under the

Fourth Amendment. *See Noonan*, 683 F. App'x at 463 ("[D]espite the aggravation, financial cost, and personal humiliation that Noonan suffered as a result of these false charges, we must conclude as a matter of law that he did not suffer a deprivation of liberty[.]"). At bottom, plaintiffs are merely asserting various damages stemming from the effort to prosecute them. But the test is not damages, it is a *deprivation of liberty under the Fourth Amendment*. Plaintiffs' § 1983 malicious prosecution claim therefore fails.

> 2.        *Plaintiffs' counterarguments are unconvincing.*

In response, plaintiffs make two main arguments. First, they ask this court to adopt Justice Ginsburg's concurrence in *Albright v. Oliver* which advocates for the "continuing seizure" doctrine. *See* 510 U.S. 266, 276–81 (1994) (Ginsburg, J., concurring); *but see Rapp*, 644 F. App'x at 628 ("[N]either the Supreme Court nor this court has adopted the 'continuing seizure' doctrine."). Second, plaintiffs cite two cases in this circuit to argue that deprivation of liberty is not synonymous to a custody-like restriction. We are not convinced by either argument.

> a.        Plaintiffs' reliance on Justice Ginsburg's continuing seizure doctrine is unavailing.

In *Albright*, Justice Ginsburg wrote a concurring opinion where she "indicate[d] more particularly [her] reasons" for joining the plurality opinion. *Albright*, 510 U.S. at 276 (Ginsburg, J., concurring). What is relevant for our analysis here is that Justice Ginsburg, in her concurrence, noted that a person released before trial "is hardly freed from the state's control." *Id.* at 278. Instead, he must seek permission from the state to engage in many tasks and pending his prosecution "his employment prospects may be diminished severely, he may suffer reputational harm, and he will experience the financial and emotional strain of preparing a defense." *Id.* According to plaintiffs, we should adopt this concurrence to hold that, in effect, all parties required to appear in court at the state's command suffer a seizure.

Regardless of the merits of the various aspects of Justice Ginsburg's concurrence, we have held that it does not apply in the particular circumstance where a plaintiff suffers no meaningful pretrial restriction. *See Wright*, 962 F.3d at 876–77; *Miller*, 866 F.3d at 393.

Similarly, none of the out-of-circuit cases cited by plaintiffs applied Justice Ginsburg's theory in the absence of pretrial restrictions. Rather, those cases applied the continuing seizure doctrine where the plaintiff suffered "pre-trial restrictions" designed "to compel a court appearance." *Schneyder v. Smith*, 653 F.3d 313, 321 (3d Cir. 2011); *see also Murphy v. Lynn*, 118 F.3d 938, 945 (2d Cir. 1997) (applying the continuing seizure theory where plaintiff was arrested, "he spent that night in jail" and was later ordered "not [to] leave the State of New York"). Plaintiffs' reliance on Justice Ginsburg's concurrence in this case is therefore unavailing.

> b.  *Miller v. Maddox* and *Johnson v. City of Cincinnati* do not strengthen plaintiffs' argument and, if anything, provide further support for our conclusion that plaintiffs have not pled a liberty deprivation.

Plaintiffs also cite two cases in this circuit that they claim support their position: *Miller v. Maddox* and *Johnson v. City of Cincinnati*. In *Miller*, we held that the plaintiff's participation in a pretrial release program apart from her initial arrest constituted a deprivation of liberty. 866 F.3d at 393. In so doing, we distinguished the plaintiff in *Miller* from the plaintiff in *Noonan*, noting that this was not just a case when the plaintiff had to suffer the costs of criminal proceedings and the reputational harms that came with it. *Id.* Instead, because restrictions were imposed that were "designed to compel court appearance" the plaintiff had made out a viable malicious prosecution claim under the Fourth Amendment. *Id.* at 393–94.

Plaintiffs here, by contrast, plead no pretrial restrictions. In fact, they were never even indicted, and there were no pretrial restrictions that attached to their being charged. If anything, *Miller* and its discussion of what made its situation different than *Noonan* (and that case's implicit adoption of *Noonan*) supports the idea that plaintiffs are closer to *Noonan* (no deprivation of liberty for reputation, cost, and property) than to *Miller* (deprivation of liberty for pretrial restrictions).

Plaintiffs also cite *Johnson v. City of Cincinnati* to support their argument. But in that case, we held that merely curtailing a "suspect's right to interstate travel" is *not* a deprivation of liberty under the Fourth Amendment. 310 F.3d 484, 493 (6th Cir. 2002). Instead, for there to be such a liberty deprivation we would likely need some other restrictions "designed to compel an

ultimate court appearance, such as obligations to post bond, attend court hearings, and contact pretrial services." *Id.* Plaintiffs neither allege any facts that could satisfy that additional hurdle, nor do they even allege that they were prohibited from interstate travel. Like *Miller*, *Johnson*, if anything, *hurts* plaintiffs' case.

***

For these reasons, plaintiffs have failed to plead a deprivation of liberty under the Fourth Amendment*,* and we affirm the district court's decision to dismiss their federal malicious prosecution claim on these grounds.

B.　　<u>Because plaintiffs have not pled a deprivation of liberty under the Fourth Amendment, they have no viable fabrication of evidence claim.</u>

Plaintiffs also bring a fabrication of evidence claim under the Fourth Amendment. The district court dismissed the claim because to plead a violation of the Fourth Amendment, one must show a deprivation of liberty and, accepting all plaintiffs' allegations as true, they have failed to do so. We agree with the district court.

In addressing a § 1983 claim, the court must "identify the specific constitutional right" at issue. *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017) (quoting *Albright*, 510 U.S. at 271)). And the plaintiff must be deprived of that right. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979). As relevant, "[f]abrication of evidence is not a *constitutional violation* 'in and of itself.'" *Hoskins v. Knox County*, No. 6:17-CV-84-REW-HAI, 2020 WL 1442668, at *21 (E.D. Ky. Mar. 23, 2020) (quotation omitted) (emphasis added), *aff'd sub nom. Hoskins v. York*, No. 23-5325, 2024 WL 2894648 (6th Cir. June 10, 2024). "Rather, the *use* of fabricated evidence to *some end* offends constitutional rights." *Id.* (emphasis in original). Because this is a Fourth Amendment claim, there must be a consequent deprivation of liberty *caused* by the fabrication of evidence to make out a claim. *See Friskey v. Bracke*, No. 20-5187, 2020 WL 8614220, at *3 (6th Cir. Sept. 30, 2020) ("A plaintiff must 'show that the criminal proceedings against him—and consequent deprivations of his liberty—were caused by the [defendant]'s malfeasance in fabricating evidence.'" (quoting *McDonough v. Smith*, 588 U.S. 109, 117 (2019) (alteration in original)). Ultimately, "[c]laims stemming from a plaintiff's seizure and continued detention based on

purportedly false or fabricated evidence presented by law enforcement fall under the broad umbrella of malicious prosecution and are rooted in the protections afforded by the Fourth Amendment." *Tanner v. Walters*, 98 F.4th 726, 733–34 (6th Cir. 2024). Just like malicious prosecution, fabrication of evidence under the Fourth Amendment requires plaintiffs to show a deprivation of liberty.

In response, plaintiffs point to *Jackson v. City of Cleveland* where we held that "[t]he Due Process Clause of the Fourteenth Amendment is also 'violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury.'" 925 F.3d 793, 815–16 (6th Cir. 2019) (quotation omitted). But this *Fourteenth Amendment* case is inapposite to plaintiffs' *Fourth Amendment* claim. The Fourth Amendment at its core applies to "pretrial deprivations of liberty." *Johnson v. City of Cincinnati*, 310 F.3d at 491 (quoting *Albright*, 510 U.S. at 274). Fourth Amendment claims must involve a pretrial deprivation of liberty, or they are not Fourth Amendment claims. *See Albright*, 510 U.S. at 274; *see also Torres v. McLaughlin*, 163 F.3d 169, 174 (3d Cir. 1998) ("[T]he Framers of the Constitution drafted the Fourth Amendment to quell *pretrial* deprivations of liberty." (emphasis in original)). Thus, there can be no question that a Fourth Amendment fabrication of evidence claim must involve a deprivation of liberty. And because plaintiffs have not pled a deprivation of liberty, we must also dismiss their Fourth Amendment fabrication of evidence claim.

C.    Because plaintiffs have not pled an underlying constitutional violation, they do not have any viable claims for supervisory, failure to intervene, or *Monell* liability.

Given that plaintiffs have not successfully pled any federal claims for malicious prosecution or fabrication of evidence, their claims for supervisory, failure to intervene, and *Monell* liability must also fail for lack of any underlying constitutional violation. *See McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006) (no supervisory liability if no underlying unconstitutional conduct); *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 413 (6th Cir. 2015) (no failure to intervene liability if no underlying unconstitutional conduct); *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (no *Monell* liability if no underlying unconstitutional conduct).

D.     Plaintiffs have no viable defamation claim as the press release underlying
       their claim is subject to an absolute privilege under Kentucky state law.

We now address plaintiffs' state-law claims.  Plaintiffs do not argue their negligent supervision and training claims against Gordon and Weathers in their briefs at all.  And the "failure to raise an argument in [an] appellate brief constitutes a waiver of the argument on appeal."  *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 311 (6th Cir. 2005).  However, plaintiffs continue to argue on appeal that the district court erred in dismissing their state-law defamation claims.  Under Kentucky state law, the press release in this case is subject to an absolute privilege. We therefore affirm the district court's dismissal of plaintiffs' defamation claims.

To bring a defamation claim in Kentucky, plaintiffs must prove four elements.  *Toler v. Süd-Chemie, Inc.*, 458 SW.3d 276, 281–82 (Ky. 2014).  First, there must be a false or defamatory statement.  *Id.* at 282.  Second, that statement must be published.  *Id.*  Third, the publisher must be at least negligent.  *Id.*  And fourth, a special harm caused by the publication or actionability irrespective of a special harm must exist.  *Id.*  Plaintiffs allege in their complaint that Gordon issued a press release that contained defamatory statements mirroring Vinlove's allegations against them that were then subsequently published in various news sources.  While the district court concluded, and defendants now argue, that plaintiffs have not pled their state-law defamation claim with sufficient specificity, we need not address that issue because the statements in the press release are subject to an absolute privilege.

In Kentucky, statements made "in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry, [even if] it is claimed that they are false and alleged with malice."  *Maggard v. Kinney*, 576 S.W.3d 559, 567 (Ky. 2019); *see also Heavrin v. Nelson*, 384 F.3d 199, 202 (6th Cir. 2004).  If the statements are not "material, pertinent, and relevant" to the matter at issue they are only subject to a "qualified[] privilege[.]" *Maggard*, 576 S.W.3d at 567.  Under this standard, plaintiffs can succeed on a defamation claim so long as—along with proving that the statements were defamatory—they also prove that the statements were made in bad faith and with malice.  *See O'Connell v. Thieneman*, 616 S.W.3d 704, 709–10 (Ky. Ct. App. 2020) (applying qualified privilege in the context of defamation); *see*

*also Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky. 2001) (discussing qualified privilege and malice). Because plaintiffs allege malice in their complaint, if the press release *was* subject to only a qualified privilege, plaintiffs' claims would survive a motion to dismiss.

We conclude, however, that the statements in Gordon's press release are subject to the absolute judicial statements privilege. As described by plaintiffs' own complaints, Gordon's press release merely repeated the allegations made in the charging documents. The allegations in the charging documents, however, were pertinent to the prosecution and thus subject to the judicial statements privilege. *See Maggard*, 576 S.W.3d at 567. And under Kentucky law, that privilege extends to Gordon's republication of the allegations in a press release. *In re Lowenbraun*, 453 F.3d 314, 322 (6th Cir. 2006); *Ohnemus v. Thompson*, 594 F. App'x 864, 869–70 (6th Cir. 2014). To state a defamation claim, plaintiff must therefore allege that the press release contained defamatory statements beyond those included in the charging documents. Because they have not done so, their defamation claim fails.[4]

> E.　Because Plaintiffs failed to adequately allege that Gordon or Weathers initiated, continued, or procured a criminal proceeding against them, their state-law malicious prosecution claim fails.

Plaintiffs argue that the district court erred in dismissing their state-law malicious prosecution claim because they failed to adequately allege that Gordon or Weathers initiated or influenced their prosecution. Specifically, they contend that the district court "imposed too stringent a standard at this stage." CA6 R.17, Appellant Br. at 21. However, they fail to clearly

---

[4]One could maybe imagine that plaintiffs' complaint could be referring to something besides or in addition to this "press release." For instance, maybe the facts would show that any of the defendants published further statements defaming plaintiffs beyond just reiterating what was in the investigation. If that were true, there could be a factual dispute as to whether these statements were beyond the officer's duty and not subject to absolute privilege. *Cf. Stilger v. Flint*, 391 S.W.3d 751, 754 (Ky. 2013) (factual dispute as to whether letter to an AG asking to begin proceedings was "pertinent, material, or relevant to a judicial proceeding" and thus covered under an absolute privilege). But plaintiffs have not sufficiently pled any indication of such defamatory statement in their complaint beyond the press release. *See Cromer v. Montgomery*, No. 2007-CA-002389-MR, 2009 WL 484999, at *10 (Ky. Ct. App. Feb. 27, 2009); *Brake Parts, Inc. v. Lewis*, Nos. 09-132-KSF/10-212-KSF, 2011 WL 42973, at *3 (E.D. Ky. Jan. 6, 2011) (citing *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 796 (Ky. 2004)). So, to the extent, that plaintiffs argue that they were referring to "something else" besides a press release describing the proceedings, they have failed to identify that "something else" in their complaint and, therefore, the complaint was properly dismissed. *See Smith v. Martin*, 331 S.W.3d 637, 640 n.3 (Ky. Ct. App. 2011); *Porter*, 2020 WL 4495465, at *5; *Hickman*, 2017 WL 5892212, at *4.

articulate how.**5**  To bolster their argument, plaintiffs allege that Defendant Officers, individually and jointly, influenced plaintiffs' prosecution by: (1) ignoring and withholding exculpatory evidence; (2) falsifying information in search warrant affidavits and criminal complaints; and (3) making statements to prosecutors and the grand jury.**6**

Meanwhile, defendants argue that plaintiffs have not identified "a single step, action, or decision related to the initiation or continuation of the prosecution made by" either Gordon or Weathers and thus, plaintiffs' state-law malicious claim was properly dismissed.**7**  CA6 R.18, Appellee Br. at 49–52.  Because the elements of a malicious prosecution claim are slightly different under Kentucky law,**8** we analyze plaintiffs' claim in turn. Under Kentucky law, a malicious prosecution claim requires a plaintiff to prove that: 1) defendant initiated, continued, or procured a criminal or civil judicial proceeding against him; 2) defendant acted without probable cause; 3) defendant acted with malice; 4) the proceeding terminated in favor of the person against whom it was brought; and 5) he has suffered damages as a result.  *See Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016).  Here, plaintiffs attribute virtually every action related to the investigation and initiation of their prosecution solely to Vinlove.  Accordingly, the district court concluded that plaintiffs failed to adequately plead the first element in *Martin* as to Weathers and Gordon and thus, did not reach the other elements. We agree.

Regarding the first element, the "initiation" of a criminal proceeding "generally occurs upon either the actual arrest of a person, the return of an indictment, the issuance of an arrest

---

**5**To the extent that plaintiffs argue they should be allowed to refer to defendants collectively as "Defendant Officers," the authorities to which they cite are distinguishable from the facts here.  In *Horn v. City of Covington*, 2015 WL 4042154, at *6 (E.D. Ky. July 1, 2015), the court accepted as true a plaintiff's allegation that a police chief was present at his arrest, even describing it as "unlikely," because the plaintiff amended his complaint to include the police chief among a group of officers.  In *Anderson v. Knox Cnty.*, the court allowed a plaintiff's claim against an individual officer to move forward, despite that officer's independent motion to dismiss, only because the plaintiff alleged that that specific officer had worked with other defendant officers "to obtain false statements from a witness" implicating him in a crime.  2018 WL 7500205, at *5 (E.D. Ky. Oct. 3, 2018).  Accordingly, we are not persuaded by plaintiffs' argument.

**6**Although plaintiffs cite their original complaint to support their assertions, the conduct described in (2) and (3) is solely attributed to Vinlove and not to Gordon or Weathers.

**7**In their brief, defendants employ the same arguments in trying to defeat plaintiffs' federal malicious prosecution claims.

**8**Notably, a malicious prosecution claim under Kentucky law does not appear to require a deprivation of liberty, which differs from a malicious prosecution claim brought under the Fourth Amendment.

warrant or a summons to appear and answer criminal charges." *Johnson v. St. Claire Med. Ctr., Inc.*, 2003 WL 22149386, at *2 (Ky. Ct. App. Sept. 19, 2003) (quoting William S. Haynes, *Kentucky Jurisprudence* § 14–3(a) (1987)). None of these actions occurred here as it pertains to Gordon or Weathers.

To "continue" a criminal proceeding, an individual must "take[] an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another" person. Restatement (Second) of Torts § 655 (1977). Here, plaintiffs have failed to allege that Gordon or Weathers took any part in their prosecution. In fact, plaintiffs criticized both defendants for ignoring exculpatory evidence, which may suggest lack of involvement or disinterest. And although Gordon's press release "includ[ed] the fabricated allegations," which allegedly harmed plaintiffs' reputations, they do not adequately explain how the press release helped to "continue" the proceedings against them. DE 1, Compl., Page ID 13. Instead, in conclusory fashion, they argue that defendants "forever tarnished Mr. Adams' reputation by setting in motion a criminal prosecution lacking probable cause" yet fail to explain precisely how. *Id*. But even if plaintiffs could point to an action linking defendants' press release to their criminal prosecution, the bar is high. Kentucky courts have found that various actions taken by officers in the context of criminal proceedings do not constitute the initiation, continuation, or procurement of criminal process. In *Hyche v. Molett*, a Kentucky state appellate court upheld a grant of summary judgment to two officers who demonstrated not having a role in "initiating, continuing, or procuring" the criminal proceedings against a plaintiff despite interviewing witnesses, relaying information learned to their superiors, participating in the plaintiff's arrest, preparing the police report, and reporting the arrest to the plaintiff's employer. 2018 WL 2187006, at *5 (Ky. Ct. App. May 11, 2018)

Lastly, "procuring" a criminal proceeding "is synonymous with being the proximate and efficient cause of putting the law in motion against another person." *Martin*, 507 S.W.3d at 12 (internal quotation marks omitted). Plaintiffs do not allege that Gordon or Weathers ever directed or encouraged Vinlove to file the criminal complaint against them, nor do they allege that either provided false information for Vinlove to do so. And although plaintiffs allege that Weathers and Gordon ignored exculpatory evidence, they do not allege facts showing that this

resulted in Vinlove's complaint.  To the contrary, plaintiffs claim that Vinlove already had the exculpatory evidence and nevertheless filed the complaint.  Accordingly, plaintiffs have failed to show that either Gordon or Weathers was the proximate and efficient cause of Vinlove's initiation of the criminal proceeding.

Because plaintiffs have failed to allege the first element of malicious prosecution under Kentucky law, we affirm the district court's dismissal of the state-law malicious prosecution claim against Weathers and Gordon.

## IV.

For the foregoing reasons, we affirm the decision of the district court.